## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| KAYE R. MEDINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:17CV00824AGF |
| | ) | |
| JASON HARDY, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

COMES NOW Defendant, Jason Hardy, by and through his attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Nicholas P. Llewellyn, Assistant United States Attorney for said District, and in support of his Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed R. Civ. P. 12(b)(1), state as follows:

### STATEMENT OF FACTS

On or about February 21, 2017, Plaintiff Kaye Medina ("Medina"), a National Archives and Records Administration ("NAPA") employee, filed an "Adult Abuse/Stalking Petition for Order of Protection" in the Circuit Court of St. Louis County, Missouri against Jason Hardy ("Hardy"), Chief, Management Systems Staff, National Personnel Records Center, ("NPRC"), NARA.   Medina alleged as the underlying basis for her petition that in "February, 2017 [Hardy] stalked me harassed me coerced me" while she was working at the National Personnel Records Center.   In paragraph 12 of her Petition, Plaintiff alleges "Jason stalks my internet connections at work and does major internet updates during my emotional cycles like a divorce.   He used my mental health records to break me down at work." Medina does not allege any personal interaction

between herself and the Chief of Management Systems Staff.   None of Medina's allegations concerned conduct outside the workplace.

Medina's petition requests that an order be issued restraining her Chief of Management Systems Staff, Jason Hardy, from: "committing or threatening to commit domestic violence, sexual assault, molesting, or disturbing the peace of [Medina] wherever [Medina] may be found; stalking [Medina]; entering the dwelling of [Medina] located at [blank in Petition]; entering onto the premises of the [Medina's] place of employment located at [blank in Petition]; come within 500 (feet) of the [Medina]; communicating with [Medina] in any manner or through any medium." Plaintiff also requests the Court to issue: an "Order that [Hardy] make or continue to make the rent or mortgage payments in the amount of $675 on the residence occupied by [Medina]; Order that [Hardy] pay [Medina's] rent at a residence other than the residence previously shared with Respondent, in the amount of $1000 per month; Order [Hardy] to pay a reasonable fee for housing and other services provided to [Medina] by a shelter for victims of domestic violence; and Order [Hardy] to pay the cost of medical treatment or services provided to [Medina] as a result of injuries sustained by an act of domestic violence committed by [Hardy]. See Plaintiff's Petition, ¶¶15, 20, 21, 22, 23

Medina cites §455.010 to §455.085 RSMo as her statutory basis for such request. §455.010(1)(d) RSMo defines harassment as "engaging in a purposeful or knowing course of conduct **involving more than one incident** that alarms or causes distress to an adult or child and **serves no legitimate purpose**" (emphasis added).   §455.010(11) RSMo defines a petitioner as "a **family or household member** who has been a victim of **domestic violence**, or any person who has been the victim of stalking" (emphasis added).   455.010(13) RSMo defines stalking as "when any person purposely and **repeatedly** engages in an unwanted course of conduct that causes alarm

to another person when it is reasonable in that person's situation to have been alarmed by the conduct.   (b) "Course of conduct" means a pattern of conduct composed of **repeated acts over a period of time** . . . that **serves no legitimate purpose**." (emphasis added).

Hardy has no personal or domestic relationship with Medina and all contact between Medina and Hardy takes place at the NPRC within the employer/employee relationship.   Medina is attempting to prevent Hardy from approaching her or contacting her via office-wide emails, or performing any system-wide computer updates while Medina works at the NPRC.   Clearly, this is not the purpose of the statute upon which Medina relies.   Medina's desire to prevent Hardy from performing his official duties as the Chief of Management Systems Staff while at work cannot be based on a statute which prevents conduct that "serves no legitimate purpose."   Medina is inappropriately seeking to use a state statute designed to protect persons from domestic violence and stalkers in order to address her vague workplace complaints.

On March 3, 2017, the case was removed to this court pursuant to 28 U.S.C. § 1442(a).

## ARGUMENT

### I.     Standards Governing Motions to Dismiss

The function of a motion pursuant to Rule 12(b)(1) Fed. R. Civ. P., is to allow the court to address the threshold question of jurisdiction, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial."   United States v. Osborn, 918 F.2d 724, 729 (8th Cir. 1990).   A district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached."   Osborn, 918 F.2d at 729; citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).   "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." Id.

When ruling on a Rule 12(b)(1) motion that raises a jurisdictional challenge, the court can consider materials outside of the pleaded allegations of the complaint.   Osborn, 918 F.2d at 730. With a 12(b)(1) motion, the issue before the court is whether the court has subject matter jurisdiction, a separate issue from any issues with the pleadings.   Since subject matter jurisdiction goes directly to the Court's power to hear the case, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730.   In other words, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.   In addition, the plaintiff carries the burden of proof that jurisdiction exists.   Id. at 730.

Lack of subject matter jurisdiction cannot be waived by the parties, or ignored by the courts, at any stage of the litigation. Sadler v. Green Tree Servicing, LLC, 466 F.3d 623, 625 (8th Cir. 2006) (citing Hunter v. Underwood, 362 F.3d 468, 476 (8th Cir. 2004)). Subject matter jurisdiction may be raised at any time by a party to an action, or by the court sua sponte. Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993); see also, Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006). In fact, Rule 12 specifically states that "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3), Fed. R. Civ. P.   "No case can properly go to trial if the court is not satisfied that it has jurisdiction… The jurisdiction issue must be resolved first."   Osborn, 918 F.2d at 730 (quoting Crawford v. United States, 796 F.2d 924,928 (7th Cir. 1986).

## II.     Plaintiff's Claims Should Be Dismissed for Lack of Jurisdiction

It is well established that federal civil service employees like Medina are afforded various remedies under which to seek relief for alleged violations of their rights in the workplace.   See

Bush v. Lucas, 462 U.S. 367, 385 (1983); Ellis v. United States Postal Service, 784 F.2d 835, 839-40 (7th Cir. 1986); Andrzejewski v. United States Postal Service, 636 F.Supp. 758 (E.D. Mo. 1986). The Civil Service Reform Act of 1978, 5 U.S.C. §7501, et. seq. "is a detailed, comprehensive effort to regulate employee-management relations in the federal government."   Indeed, it provides the exclusive remedy for federal employee grievances and disputes arising out of federal employment and preempts any remedy available under common law.   See Bush, 462 U.S. at 385-88.

To the extent Medina complains of discrimination with respect to any contact with Hardy, Title VII of the Civil Rights Act provides the exclusive remedy for lawsuits by federal employees against federal agencies, including the National Archives and Records Administration.   See 42 U.S.C. §2000e-16(c); Brown v. General Services Administration, 425 U.S. 820, 835 (1976). Jurisdiction is conferred on the District Court pursuant to 42 U.S.C. §2000e-5(f)(3).   However, federal employees must first exhaust their mandatory administrative remedies before the EEOC prior to proceeding to federal district court.   Medina does not allege in the petition that she has done so.

In seeking redress for her alleged workplace dispute with a NPRC manager, Medina had viable administrative options under the CSRA and Title VII.   She did not cite in her petition (nor can she point to) any statutory basis for jurisdiction in the state court.   Accordingly, the complaint must be dismissed.

WHEREFORE, Defendant prays this honorable Court dismiss Plaintiff's case in its entirety for lack of subject matter jurisdiction.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*S/ Nicholas P. Llewellyn*
NICHOLAS P. LLEWELLYN #52836
Assistant United States Attorney
Chief, Civil Division
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street,     20th Floor
St. Louis, MO 63102
(314)539-7637
Fax: (314)539-2287
Email: nicholas.llewellyn@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2017, the foregoing *Memorandum in Support of Motion to Dismiss* was filed electronically with the Clerk of the Court and a copy was sent by U.S. Mail, postage prepaid to:

**Kaye R. Medina**
1211 Elkay Ct., Apt. 201
Highland, IL   62249
Plaintiff *Pro Se*

*s/     Nicholas P. Llewellyn*
NICHOLAS P. LLEWELLYN